110 F.3d 64
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jerry SISK, Plaintiff-Appellant,
v.
SHELBY COUNTY, TENNESSEE; Shelby County Sheriff's
Department; and Steven Toarmina, Individually and
in his official capacity as agent for
Shelby County, Tennessee,
Defendants-Appellees.
 No. 96-5379.
 United States Court of Appeals, Sixth Circuit.
 April 1, 1997.
 
 Before: JONES, SUHRHEINRICH, and SILER, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 Plaintiff, Jerry Sisk, appeals the district court's dismissal of this action to recover for civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1985. Specifically, Sisk argues that the defendants, Shelby County, Tennessee, Shelby County Sheriff's Department, Sheriff A.C. Gilless, and Stephen Toarmina (collectively, the "Defendants"), violated and conspired to violate his Fourth Amendment right to be free from unreasonable searches and seizures.[1] For the following reasons, the court AFFIRMS the decision of the district court.
 
 I. BACKGROUND
 
 2
 At approximately 1:00 a.m. on January 23, 1994, Sisk, returning home from a social engagement, was driving east on Knight Arnold Road in Memphis, Tennessee. Near the intersection of Knight Arnold and Hickory Hill, Sisk observed a car exiting a private driveway and attempting to cross Knight Arnold Road by driving south across all lanes of traffic. The car narrowly missed colliding with Sisk's vehicle. Believing that he had the right-of-way and that the driver of the approaching car was operating his vehicle in a dangerous and erratic manner, Sisk flashed his bright lights at the driver, Toarmina.
 
 
 3
 Sisk subsequently proceeded to his home, which was a few blocks away from the near collision. As he turned onto his street, he noticed what he believed to be "a legitimate law enforcement vehicle with its emergency lights operating" quickly approaching him. Sisk assumed that the vehicle was pursuing someone else and continued driving down his street. Directly in front of Sisk's house, Toarmina, the driver of the vehicle, forced Sisk to pull his car to the side of the road.
 
 
 4
 Toarmina exited the police car and, drawing and aiming his pistol at Sisk, ordered Sisk to step out of his car. Sisk complied. Toarmina handcuffed and "verbally abused" Sisk and informed him that he was going "downtown" for driving under the influence. Toarmina also called other "legitimate" law enforcement deputies to Sisk's house. During the arrest, Sisk was twice sprayed with pepper spray and struck on the side of his head with a blunt instrument. Sisk does not allege in his complaint who committed these acts.
 
 
 5
 Sisk went to trial on the driving under the influence charge. Toarmina testified at the trial, holding himself out as a duly authorized law enforcement officer. On September 28, 1994, a jury found Sisk innocent of the charge.
 
 
 6
 During the first half of 1995, The Commercial Appeal, a Memphis newspaper, reported that Toarmina had been acting as a renegade police officer by exceeding the scope of his duties as a Special Deputy. Upon reading the article, Sisk began to suspect that something had been amiss with respect to his arrest. He subsequently learned that Toarmina was only a Special Deputy to Sheriff Gilless and that the purpose of the Special Deputy program was to assist and advise the Sheriff's Department in a non-law enforcement capacity. Special Deputies were not duly commissioned law enforcement officers and did not have the authority to engage in actual law enforcement activities such as making arrests. Toarmina, however, had for several years been performing law enforcement duties as a Special Deputy and, on numerous occasions, had stopped and arrested persons whom he suspected of breaking the law. Sisk also learned that Toarmina had conducted these law enforcement activities with the knowledge, consent, and encouragement of his superiors, including Sheriff Gilless and Shelby County.
 
 
 7
 On September 28, 1995, Sisk filed the instant action, alleging his Fourth Amendment claim and state law claims of negligent or intentional infliction of emotional distress and assault and battery. The Defendants moved to dismiss Sisk's claims under sections 1983 and 1985, arguing that the one-year statute of limitations expired on the anniversary of the challenged arrest, eight months prior to the filing of the complaint. The district court found that Sisk's excessive force claim accrued on the date of his arrest and, thus, was untimely filed.[2] The court found that Sisk's false arrest and conspiracy claims were timely because the statute of limitations on those claims did not begin to run until early 1995, when Sisk first discovered Toarmina's status as a Special Deputy. The court, however, dismissed the suit, finding that Tennessee law authorized arrests made by private persons.
 
 II. DISCUSSION
 
 8
 Assuming, without deciding, that Sisk has a right not to be arrested by a Special Deputy and accepting as true his allegations that he was unaware of Toarmina's status as a Special Deputy until early 1995, the complaint alleges facts from which one could infer that Sisk was unaware of his injury until he read the article in The Commercial Appeal. However, we also assume, without deciding, that the Fourth Amendment and conspiracy claims were timely filed, as we can resolve this case on the claims made.
 
 
 9
 Tennessee law authorizes arrests by private persons. T.C.A. § 40-7-101(3). A private person may arrest another:
 
 
 10
 (1) For a public offense committed in his presence;
 
 
 11
 (2) When the person arrested has committed a felony, although not in his presence; or
 
 
 12
 (3) When a felony has been committed, and he has reasonable cause to believe that the person arrested committed it.
 
 
 13
 T.C.A. § 40-7-109(a)(1)-(3). When a private person makes an arrest, he or she must "inform the person arrested of the cause thereof, except when he is in the actual commission of the offense, or when arrested on pursuit." T.C.A. § 40-7-111. The arresting citizen must also take the arrestee, without unnecessary delay, before a magistrate or deliver the arrestee to a police officer. T.C.A. § 40-7-113.
 
 
 14
 A police officer acting beyond his or her authority may use the citizen's arrest statute to validate an otherwise unlawful arrest. In State of Tennessee v. Johnson, 661 S.W.2d 854 (Tenn.1983), cert. denied, 476 U.S. 1130 (1986), the Tennessee Supreme Court applied T.C.A. § 40-7-109 to the actions of a sheriff's deputy who effected a warrantless arrest of a defendant outside his jurisdiction. Using the citizen's arrest statute as a savings provision, the court upheld the arrest. Id. at 859. It found that, even if the deputy was limited to the authority of a private person, he was authorized to arrest the defendant under T.C.A. § 40-7-109(a). Id. In United States v. Layne, 6 F.3d 396, 398-99 (6th Cir.1993), cert. denied, 114 S.Ct. 1374 (1994), the court followed Johnson and held that an arrest made by Tennessee police officers outside their jurisdiction, when predicated on probable cause, did not violate the Fourth Amendment because the officer's actions were authorized as a citizen's arrest.
 
 
 15
 In the case at hand, Toarmina's actions were authorized as a citizen's arrest. First, driving under the influence is a public offense. See, e.g., State of Tennessee v. Durham, 1995 WL 678811, at * 2 (Tenn.Crim.App. Nov. 16, 1995) (unpublished opinion) (finding that citizen's arrest statute authorized police officer to arrest defendant for DUI outside of officer's jurisdiction).[3] Second, the incident occurred in Toarmina's presence.[4] Third, Toarmina informed Sisk of the cause of the arrest when he told Sisk that he was "going 'downtown' for DUI." Fourth, Toarmina delivered Sisk to sheriff's deputies without unnecessary delay.
 
 
 16
 Although Sisk argues that Toarmina cannot use the citizen's arrest provisions because he held himself out as an authorized deputy, Layne and Johnson allowed police officers acting under color of their police authority to later use the citizen's arrest statute to validate otherwise unauthorized arrests. Moreover, the court in Durham expressly rejected this argument: "The Defendant also argues that the officer in the case sub judice was on duty and stated that he was acting as a police officer at the time. Again, we do not believe the distinction is meaningful." 1995 WL 678811, at * 1.
 
 
 17
 The district court properly dismissed Sisk's section 1983 claim because Toarmina's actions did not violate the Fourth Amendment. Additionally, because Sisk cannot articulate a cognizable Fourth Amendment claim, the district court properly dismissed his section 1985 and respondeat superior claims and properly dismissed Sisk's state law claims for lack of subject matter jurisdiction.[5] Because the court finds that Toarmina arrested Sisk under the citizen's arrest statute, the court declines to address Sisk's claim that he has a constitutional right to be arrested only by an authorized police officer.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The complaint incorrectly lists Stephen Toarmina as "Steven" Toarmina
 
 
 [2]
 Sisk does not appeal the district court's dismissal of his excessive force claim
 
 
 [3]
 Tennessee Court of Criminal Appeals Rule 19(4) allows for citation of unpublished opinions
 
 
 [4]
 Sisk does not allege that he was arrested without probable cause. To the extent that he does so allege, he was aware of any lack of probable cause on the date of his arrest. Consequently, any probable cause claim is untimely
 
 
 [5]
 Sisk's § 1985 claim alleged that the Defendants conspired to violate his Fourth Amendment rights. An allegation of conspiracy without a proven constitutional deprivation is insufficient to support a § 1985 claim. See Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir.1994) (stating that to prove a violation of § 1985 plaintiff must show deprivation of constitutional right or privilege), cert. denied, 115 S.Ct. 1698 (1995)